IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| S.M. REAL ESTATE, LLC, et al | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Case No. 8:09-cv-00978-RWT |
| | § | |
| CHRISTIAN LAETTNER, et al | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

For their points and authorities in support of this motion, defendants Laettner and

Davis submit this memorandum of law for the Court's consideration.

### I.  Introduction

On August 3, 2007 an Agreement was entered into between S.M. Realty, LLC and

several other entities (none of whom are defendants in this action) pertaining , *inter alia*,

to a $3 million loan made by S. M. Realty, LLC and S.M. Real Estate, LLC ( referred to

collectively herein as "SM Realty'). The $3 million loan was made to a specific entity

which is not a party to this suit-- B D Ventures, LLC ("BD Ventures").  (See, the August

3, 2007 Agreement attached, **Exhibit No 1**)  Two promissory notes evidence the $3

million loan; the notes do not mature until **August 3, 2009.** (See, the two notes attached,

**Exhibit No. 2**) These two notes are the subject of the complaint in this action. (Complaint, ¶ 7)

The source of the funds for the loan by SM Realty to BD Ventures was Wachovia Bank. Upon information and belief, Shawne Merriman ("Merriman"), who has an ownership interest in SM Realty, at some time prior to August 3, 2007 borrowed $3 million from Wachovia. Thus, Mr. Merriman had a personal obligation to Wachovia which obligated him to pay Wachovia $3 million on or before March 30, 2009.

As the notes in Exhibit No. 2 verify, it was each of the SM Realty entities which loaned funds to BD Ventures, not Shawne Merriman personally. The loans by SM Realty to BD Ventures is *not* in default; as mentioned previously, by their express terms the notes at issue are not due until August 3, 2009. Equally significant is that fact that BD Ventures, the obligor of both notes at issue, is *not* a party to this action. Moreover, *neither* defendant is an obligor on either of the subject notes.

Prior to December 2008, Merriman, who is a professional football player, approached Brian Davis ("Davis"), with whom Merriman had long been acquainted. Merriman advised that he was in serious financial straights, due to various off-the-field personal problems, an injury, and because he had not received the guaranteed professional football contract he was expecting. Mr. Merriman advised that these events resulted in his poor financial circumstances. Merriman requested favors from Davis and Davis' business associate, Christian Laettner ("Laettner"). Merriman requested assistance to try to meet his mounting financial problems and obligations.

For no consideration whatsoever, and as a favor to Merriman, Davis and Laettner helped Merriman financially so that Merriman's personal obligation to Wachovia Bank would remain current.

Effective December 2008, Laettner, Davis and Merriman entered into the attached First Amendment to Memorandum of Understanding ("Amended MOU"). (See, Amended MOU, attached as **Exhibit No. 3**) The complaint in this action alleges that Laettner and Davis defaulted in performance of their obligation under the Amended MOU by failing to make the payment of amounts due in accordance with the Amended MOU. (Complaint, ¶ 17) Even if this allegation were true, and it is not, there is no allegation and no competent evidence that Wachovia has declared Merriman's debt to be in default or that any note Merriman owes Wachovia to be in default by reason of any conduct of defendants. For these reasons and as outlined herein, Count I of the complaint fails as a matter of law.

As for Count II of the complaint, it seeks specific performance and the conveyance of real estate. It too is fatally flawed. It seeks specific performance for an alleged "gift" of interests in various real estate development projects. (Complaint, ¶ 26) Count II seeks the following relief from this court: "[T]o order Laettner and Davis to convey, or cause BDV (BD Ventures) to convey, to Merriman his ownership interest in the Projects..." (Complaint, Count II, see "Wherefore" clause on pg. 5).

The gift is alleged to have been made by a party or parties who are *not* before the court, and which are not alleged to have authorized or approved of any such gift of an interest in various real estate projects, including future real estate projects which have

3

never developed into reality. The August 3, 2007 agreement (Exhibit No. 1) on its face indicates that the real estate projects in question include real property purportedly owned by non-party entities, as well as projects which do not even exist and have never existed. See, for example, MOU at pg. 2 which references, as to various projects, that e.g., the terms of a contract were "being negotiated" as to Atlanta –East Village; as to Washington, DC-- Mozart Square, the MOU expressly references "inten[t] to enter into a contract to purchase." Also significant is the following provision at paragraph 1 (e) of the MOU which on its face reveals the absence of an enforceable agreement with all material terms in place:

> "(e)    In the event one or more of the foregoing Real Estate Projects are not developed for any reason, Shawne's Investment in such Project or Projects shall be transferred, at Shawne's option, to one or more other real estate projects undertaken by Brian or Christian (or entities in which they have an interest) on terms and conditions agreed to by the parties in good faith, but in no event less favorable than the terms of this Amended MOU."

In short, as to the claim in Count II, the parties before the court are not alleged to own the real estate which is the subject of the alleged gift. In pertinent part, the Complaint alleges that, "Laettner and Davis were to cause BDV [BD Ventures, LLC] to give Merriman the ownership interests in the Projects." (Complaint, ¶ 26)  The "agreement" is unenforceable as a matter of law for the reasons set forth below.

4

## II. Standards of Review

### A. Motion to Dismiss.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which should entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. V. Air-A-Plane Corp.,* 128 F.3d 855, 860 (4th Cir. 1997).

In viewing the complaint, the court accepts all well-pled allegations as true and construes the facts and reasonable inferences derived there from in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). As recognized in *Sensormatic Security Corp. v. Sensormatic Electronics Corp.,* 249 F. Supp. 2d 703 (D. Md. 2003), the court need not, however, accept unsupported legal conclusions, citing to *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, citing to *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, citing to *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979). See, *Sensormatic,* supra, 249 F. Supp. at 707.

Here, the complaint presents legal conclusions couched as factual allegations which are devoid of reference to the actual events as outlined herein, as well as unsupported legal conclusions.

5

Proper pleading consists of short and plain notice as required by Fed. R. Civ. P. 8. These requirements, however, do not in any way imply that the court should disregard reference to actual events. The Fourth Circuit has expressly ruled otherwise. See, *United Black Firefighters v. Hirst, supra.* Failing to plead a matter as significant as the consideration and benefit provided by the other party, particularly given that its existence is plainly required to be shown under existing Maryland law, is a fatal flaw. A pleading which on its face fails to set forth the actual events can not be construed so as to do justice in accordance with Rule 8. For these reasons and as outlined below, the Complaint fails to state a cause of action and must be dismissed.

Likewise, it is not enough that a complaint alleges a mere possibility of relief. The United States Supreme Court recently held, in connection with the Federal Rules, that a complaint must allege facts demonstrating "entitlement to relief", beyond the mere "possibility" of relief. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). *Twombly* was a class action antitrust action alleging illegal conspiracy in the Baby Bells to inhibit the growth of third-party competitors. In reversing the Second Circuit, the Supreme Court significantly re-defined the standard to be applied under the Federal Rules in determining whether a complaint states a claim upon which relief can be granted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations..., a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. ...Factual allegations must be enough to raise a right to relief above the speculative level..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact). ...

6

127 S.Ct. at 1965 (citations omitted). [1]

Under *Twombly,* pleading a possibility of recovery is not enough. The complaint
(or counterclaim) must furnish factual "allegations plausibly suggesting (not merely
consistent with)" an "entitlement to relief." 127 S.Ct. 1966 (internal quotations omitted).
A complaint that alleges two equal possibilities for the defendant's behavior -- one of
which is actionable and one of which is not -- fails to state a claim upon which relief can
be granted and should be dismissed.

### B.    Motion for Summary Judgment.

As set forth above, Defendants have moved to dismiss for failure to state a claim
under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under
Fed.R.Civ.P. 56. A court considers only the pleadings when deciding a Rule 12(b) (6)
motion. Where the parties present matters outside of the pleadings, as here, and the court
considers those matters, the motion is treated as one for summary judgment. *See*
Fed.R.Civ.P.12(d); *Gadsby by Gadsby v. Grasmick, 109* F.3d 940, 949 (4th Cir. 1997);
*Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted where
there exists no genuine issue as to any material fact and the moving party is entitled to
judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In other

---

[1]     For years, the Federal courts have followed the standard that "a complaint should not be
dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355
U.S. 41, 45-46 (1957). In *Twombly,* the court decided that "this famous observation has earned it
retirement." 127 S.Ct. at 1969.

words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250; *see also Pulliam Inv. Co.* v. *Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. *1987); Morrison* v. *Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C.* v. *South Carolina,* 978 F.2d 1334, 1339 (4th Cir. 1992). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "A complete failure of proof concerning an essential element necessarily renders all other facts immaterial" *Celotex Corp.,* 477 U. S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson,* 477 U.S. at 256; *Celotex Corp.,* 477 U.S. at 324. Moreover, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.,* 108 F.3d 529, 536 (4th Cir . 1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

## III.   Arguments

### A.   Defendants are not the makers of the promissory notes at issue; the notes are not due and are not in default.

For purposes of this argument, the principal allegations of the Complaint are: (1) "The maturity date of the notes was changed from August 3, 2009 to March 30, 2009." (Complaint, ¶14); and (2) Laettner and Davis failed to pay the notes on the new maturity date of March 30, 2009. (Complaint, ¶18)

Grounded upon these two allegations, Count I of the complaint alleges breach of agreement and seeks damages for the $3 million principal amount of the two notes, plus accrued interest and attorneys' fees pursuant to the notes. There is no document which changes the maturity dates on the subject notes which are attached as Exhibit No. 2.

It is self-evident that before a party can be held liable for breach of a promissory note, the party from whom payment on the note is sought must be obligated to make payment on the note at issue. *Kagel v. Totten* 59 Md. 447 (1883).

Here, neither Davis nor Laettner is a maker of the promissory notes at issue. The maker is B D Ventures, LLC. Thus, neither defendant is obligated to make payment on the subject notes. For this reason alone, count I of the complaint fails to state a cause of action, and these defendants are entitled to judgment as a matter of law as to the claim in Count I. Accordingly, this motion should be granted as to Count I.

### B.   Plaintiff is not entitled to specific performance from Defendants; no enforceable contract exists; no gift was made.

Count II claims entitlement to specific performance, and seeks conveyance of an ownership interest in various parcels of real estate. (Complaint, ¶29) As the complaint

9

recognizes, however, defendants are not the owners of the real property at issue, and several of the projects relating to the real property at issue do not exist. (See, Complaint, ¶26). In this sense the legal failures outlined above with regard to Count I are equally applicable to Count II and the above arguments are therefore incorporated by reference as to Count II. Again, plaintiff has asserted no claim against BD Ventures which is not a party to this proceeding.

In order to be specifically enforceable, a contract to acquire an interest in real estate must be definite and certain in its terms. *Excel Co. V. Freeman*, 252 Md. 242, 250 A.2d 103 (1969). In order to be supported by valid consideration, there must exist an exchange of promises which create a mutuality of obligation. See, Eastbanc, Inc., v. Georgetwon Park Assoc., Inc. II, LP, 940 A.2d 996 (D.C 2008) In other words, all the essential terms necessary to the creation of a valid contract, including a complete and accurate description of the parcel of real estate in question, must be clear, certain and definite; there must be a complete meeting of the minds in order to create an enforceable contract. *Zaino v. Gary Hart & Assoc.*, 328 Md. 239, 614 A. 2d 84 (1992). Moreover, even where the terms of a contract are clear and definite, specific performance may only be decreed by a court where such equitable relief is sought where the contract at issue is fair and reasonable in all its terms. *Gross v. J& L Camping & Sports Ctr., Inc.* 270 Md. 529, 312 A. 2d 270 (1973). The decision to grant or deny the remedy of specific performance is committed to the sound discretion of the trial court, considered in relation to established principles of equity. *Data Consultants, Inc. v. Traywick*, 593 F. Supp. 447 (D. Md. 1983), aff'd, 742 F. 2d 1448 (4th Cir 1984).

In addition, it is fundamental that in order to have the capacity to make a gift, the alleged donor must have title to the property in question in order to divest of himself of title to the property in question. *Stouffer v. Walker,* 114 Md. 603, 80 A. 2d 603 (1911) . As Exhibit No. 2 on its face reveals, no such circumstance existed as to these Defendants. In addition, it is also settled that a mere declaration of a purpose to make a gift in the future, without valid and adequate consideration, is unenforceable. *Pope v. Safe Deposit & Trust Co.,* 163 Md. 239, 161 A. 2d 404 (1932).

The relief plaintiffs seek, namely the payment of two promissory notes with a total face value of $3 million, as well as the specific enforcement of a contract involving the conveyance of interests in real property with unclaimed value, does not fit within the reach of the equitable doctrine of specific performance. Essential terms necessary to the formation of an enforceable contract do not exist. The purported owners of the real estate, which real property plaintiffs seek this court to order defendants to convey to plaintiffs, are not before the court. Nothing in the MOU obligates the property owners to do anything. There is no consideration and no mutuality of obligation for the perpetual "agreement." The defendants are not the owners of the real property which is the subject of plaintiff's complaint. In summary, the remedy plaintiffs seek flies in the face of established principles of law and equity.

This claim arises out of the fact that Merriman was unable to meet his financial obligations due to his various off-the-field problems, his injury resulting in his not receiving the guaranteed professional football contract he expected, and the mismanagement of his financial affairs. The above authorities demonstrate the several

11

legal and equitable failings of plaintiffs' claims in Count II. The remedy plaintiffs seek here is not available.

For all these reasons, Count II fails as a matter of law.

**C.     This action fails because it is in violation of the Statute of Frauds.**

Maryland law as relates to the Statute of Frauds recognizes:

" No action may be brought on a contract for the sale of land unless the contract or some memorandum or note of it, is in writing and signed by the party to be charged ..." *Md.Code* (1974, 1988 Repl. Vol.), §5-104 of the *Real Property Article*.  To be enforceable the memorandum must be:
>  (1) a writing (formal or informal);
>  (2) signed by the party to be charged or by his agent;
>  (3) naming each party to the contract with sufficient definiteness to identify him or his agent;
>  (4) describing the land or other property to which the contact relates; and
>  (5) setting forth the terms and conditions of all the promises constituting the contract made between the parties."

Quoting *Beall v. Beall,* 291 Md. 224, 228-29, 434 A.2d 1015, 1018 (1981).

As set forth above and as demonstrated by the exhibits attached hereto, there is no competent evidence to demonstrate the existence of an enforceable contact. *Mann v. White Marsh Properties, Inc.,* 3212 Md. 111, 581 A. 2d 819 (1990) (all material terms and conditions, not just financial terms, must be agreed upon by all parties and in be writing in order to satisfy the Statue of Frauds). Here, none of the requirements of the statute of frauds can be met. Moreover, any act which is alleged to have been taken and which is alleged to be evidence of a contract must be unequivocal in order to support the

existence of an enforceable contract; this issue is one of law for the court to decide. *Mann v. White Marsh Properties, Inc.,* 581 a. 2d at 822.

In summary, Count II of the Complaint on its face fails to set forth a claim which can survive the requirements necessary to overcome the legal requirements presented by the Statute of Frauds.

### D. This action fails because it violates the Rule against Perpetuities.

The rule against perpetuities has been summarized in *Brown v. Parran,* 120 Md. App. 653, 708 A.2d 12 (1998) as follows:

> "The rule against perpetuities is a limitation on contingent future interests in property. The rule prevents property interests from vesting too remotely, so that current owners will not be discouraged from making the most effective used of their properties. *Ferrero Construction v. Dennis Rourke Corp.,* 311 Md. 560, 572, 536 A.2d.1137 (1988). The rule is concerned with restrictions that render title uncertain as well as restraints on alienation. Id. at 572-73, 536 A.2d 1137. Under the traditional rule adhered to in Maryland, the future interest, at the effective date of the instrument creating it, must vest within the period of the rule (life in being plus 21 years*). Id.* at 564-65, 536 A.2d 1137; *Ringgold v. Carvel,* 196 Md. 262, 269, 76 A.2d 327 (1950).
>
> Under the traditional rule, a court must construe the conveyance in question independent of the rule and then apply the rule. *Bowerman v. Taylor,* 126 Md. 203, 209, 94 A. 652 (1915). See also *Ferrero Constr.,* 311 Md. at 565, 536 A.2d 1137 (quoting *Fitzpatrick v. Mer.Safe, Etc. Co.,* 220 Md. 534, 541, 155 A.2d 702 (1959)) (it is a rule of law, not one of construction). The rule against perpetuities applies to contracts for the sale of real property such as the one before us. See *Dorado Ltd. Partnership v. Broadneck Development Corp.,* 317 Md. 148, 153-54, 562 A.2d 757 (1989). If a condition of the contract possibly may cause legal title to vest in the purchaser outside the period of the rule, the contract violates the rule and is to enforceable. *Id.*"

Quoting *Brown v. Parran,* 708 A. 2d at 658-59

Plaintiffs' claim in this action is that legal title should vest in plaintiffs in various real properties set forth at pages 2 and 3 of the MOU, attached to this motion at **Exhibit No. 3**. Plaintiffs' claims violate the rule because on its face the claim seeks future interest in real property which would render title to the various properties uncertain, and because such future interest may not vest ever in plaintiffs, much less within the period of the rule, life in being plus 21 years.

For these reasons, Count II of the Complaint fails as a matter of law.

### Conclusion

For all the reasons set forth above, the complaint fails as a matter of law. This action should therefore be dismissed with prejudice, or in the alternative, should the court consider the attachments to this motion, summary judgment should be entered in favor of Defendants Christian Laettner and Brian Davis.

Respectfully submitted,

BRAULT GRAHAM, LLC

_/s/Daniel L. Shea_
Daniel L. Shea, #00464
301 South Washington Street
Rockville, Maryland 20850
301-424-1060
dls@braultgraham.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6[nd] day of July 2009, a true and correct copy of the foregoing was served via electronic transmission to counsel of record as follows:

Roy I. Niedermayer, #03122
Arthur House, #00031
Paley Rothman Goldstein Rosenberg Eig and Cooper Chtd.
4800 Hampden Lane, Seventh Floor
Bethesda, Maryland 20814

_/S/Daniel L. Shea_
Daniel L. Shea, Esq.

EXHIBIT NO. 1

**BD Ventures, LLC**
2230 Massachusetts Ave NW
Washington, DC 20008

August 3, 2007

S.M. Realty, LLC
7821 Vanity Fair
Greenbelt, MD 20770

Ball Street Fund, LLC
2230 Massachusetts Ave NW
Washington, DC 20008

Ball Street Ventures, LLC
2230 Massachusetts Ave NW
Washington, DC 20008

Re:    <u>S.M. Realty, LLC Loan to BD Ventures, LLC</u>

Ladies and Gentlemen:

This letter agreement (the "Letter Agreement") sets forth our mutual understanding with respect to the loan by S.M. Realty, LLC, a Maryland limited liability company ("SMR"), to BD Ventures, LLC, a District of Columbia limited liability company ("BDV"), in the principal amount of up to Three Million Dollars ($3,000,000), as provided below (such amount actually loaned is the "Principal Amount" and the loan to BDV, the "Loan"). The Principal Amount shall be paid in two (2) installments. The first installment shall be in the amount of $250,000 (the "First Installment") and the second installment shall be in the amount that SMR is able to obtain through financing within 120 days of the execution of this Letter Agreement using best efforts (the "Second Installment); *provided, however*, that SMR shall not be required to obtain more than $2,750,000 in respect of the Second Installment. The First Installment and the Second Installment shall each be evidenced by a promissory note with BDV as maker and SMR as lender (individually a "BDV Note" and collectively, the "BDV Notes"), the forms of which are attached hereto as <u>Exhibit A</u>. This Loan is subject to material risks and contingencies including those described in <u>Exhibit B</u> (the "Loan Risks"), which have been carefully considered by SMR prior to making the Loan.

Upon the execution of this Letter Agreement by the parties hereto, SMR shall advance the First Installment to BDV and BDV shall deliver a BDV Note to SMR in such amount. Within 120 days of the execution of this Letter Agreement by the parties hereto, SMR shall advance the Second Installment to BDV and BDV shall deliver a BDV Note to SMR in the

S.M. Realty, LLC
Ball Street Fund, LLC
Ball Street Ventures, LLC
August 3, 2007
Page 2 of 5

amount of such Second Installment. BDV expects that the Loan will be advanced to Ball Street Fund, LLC, a Delaware series limited liability company ("BSF") (an entity currently under common control with BDV), to be used by BSF in its sole and absolute discretion to, among other uses, satisfy certain liquidity needs of BSF in connection with its Projects, which may include its projects in Baltimore and Atlanta in addition to other projects now and hereafter contemplated (individually a "Project", and collectively, the "Projects") and settlement of certain dispute(s) relating thereto. A copy of the promissory note evidencing the advance of the Principal Amount by BVD to BSF is attached hereto as Exhibit C (the "BSF Note"). The Projects would be owned by BSF. Pursuant to a management agreement with BSF, Ball Street Ventures, LLC, a Delaware limited liability company ("BSV"), is expected to be responsible for the day to day predevelopment tasks for the Projects.

BVD will not own any interest in the Projects or have any claim thereto except for its unsecured claim against BSF under the BSF Note. SMR hereby understands and agrees that, while repayment of the BVD notes is not contingent upon BSF successfully developing the Projects, if BSF is unsuccessful in developing the Projects, BVD may not be repaid under the BSF Note and SMR could lose the entire amount of the Loan. See "Default by Ball Street Fund, LLC; Default by BD Ventures, LLC; Default in Personal Guarantees" in the Loan Risks attached hereto as Exhibit B. SMR understands and agrees that BSV (an affiliate of BDV) shall be entitled to retain for itself twelve and a quarter percent (12.25%) of the Loan as a non-accountable development expenses and operating cost reimbursement in connection with its management of the Projects, regardless of the actual amount of development costs and expenses.

SMR hereby represents and warrants that it or each of its equity owners is an accredited investor as defined in Rule 501(a) of Regulation D under the Securities Act of 1933, as amended. Further, SMR and/or each of its equity owners is capable of bearing the economic risk of the Loan, including the possible loss of the entire Principal Amount. SMR has had access to all records of BDV and has had an opportunity to ask any and all questions of BDV and its officers or directors that SMR or any of its equity owners has requested or deemed necessary in order to make the Loan and, to the extent that SMR or any of its equity owners has exercised such opportunity, SMR and its equity owners have received satisfactory answers and responses thereto. Either SMR or its equity owners possess the experience and expertise in business and financial matters (either alone or with a representative, which representative is not in any event affiliated with BDV) necessary to evaluate the benefits and risks associated with the Loan. Either SMR or its equity owners has a pre-existing personal or business relationship with BDV and/or one or more of its affiliates, officers, member, directors or control persons. Neither SMR nor its equity owners has relied upon any oral statement made by any director, officer, employee or other agent of BDV or any affiliate of BDV in deciding to make the Loan. Neither SMR nor any of its affiliates or representatives has incurred any obligation or entered into any agreement for any brokerage or finder's fee or commission with respect to the Loan for which BDV or any of its affiliates would incur any liability.

S.M. Realty, LLC
Ball Street Fund, LLC
Ball Street Ventures, LLC
August 3, 2007
Page 3 of 5

The obligations of the parties hereunder shall not be limited or otherwise affected by any fact, circumstance or condition, or any change therein, whether now existing or hereafter arising, known or unknown, relating to BDV or its prospects or financial condition, the terms of the Loan, or otherwise, including without limitation any material adverse change therein or in the value of the Projects, whether any of the foregoing is the result of acts or omissions of any person.

Each party to this Letter Agreement agrees that in the event of a breach of this Letter Agreement, the non-breaching party shall be entitled to equitable relief, including injunction and specific performance, without the necessity of posting a bond in addition to all other remedies available at law or equity. The breaching party agrees to indemnify and reimburse the non-breaching party for any and all liabilities and expenses (including without limitation reasonable attorneys' fees and costs of investigation) incurred by the non-breaching party in connection with the enforcement of this Letter Agreement.

This Letter Agreement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995 that involve risks and uncertainties, many of which are beyond BDV's control. BDV's actual results could differ materially and adversely from those anticipated in such forward-looking statements as a result of certain factors, including those set forth below and elsewhere in this Memorandum. Important factors that may cause actual results to differ from the financial targets set forth herein include:

- the availability and adequacy of cash flow to meet requirements;
- economic, competitive, demographic, business and other conditions in relevant markets;
- changes in laws, regulations or taxes;
- actions taken or not taken by third-parties, including suppliers and contractors, as well as legislative, regulatory, judicial and other governmental authorities;
- competition in the real property industry and the development of other projects in the area;
- the loss of or failure to obtain any license or permit;
- the loss of the Project due to casualty, weather, mechanical failure or any extended or extraordinary maintenance or inspection that may be required;
- the availability of additional capital to support capital improvements and development; and
- other factors discussed under the section entitled "Loan Risks" on Exhibit B hereto.

All statements, other than statements of historical facts, included in this Letter Agreement regarding strategy, future operations, financial position, estimated revenue or losses, projected costs, prospects and plans and objectives of management are forward-looking statements. When used in this Letter Agreement, the words "will," "may," "believe," "anticipate," "intend," "estimate," "expect," "project," "plan" and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain such identifying words.

S.M. Realty, LLC
Ball Street Fund, LLC
Ball Street Ventures, LLC
August 3, 2007
Page 4 of 5

All forward-looking statements speak only as of the date of this Letter Agreement. BDV and its affiliates do not undertake any obligation to update any forward-looking statements or other information contained herein. SMR should not place undue reliance on these forward-looking statements. Although BDV believes that its plans, intentions, and expectations reflected in or suggested by the forward-looking statements in this Letter Agreement are reasonable, it cannot assure SMR that such plans, intentions or expectations will be achieved. BDV discloses important factors that could cause its actual results to differ materially from its expectations under Exhibit B hereto and elsewhere in this Letter Agreement. These cautionary statements qualify all forward-looking statements attributable to BDV or persons acting on BDV's behalf.

Information regarding market and industry statistics contained in this Letter Agreement is included based on information available to BDV and/or its affiliates that it or they believe is accurate. It is generally based on academic and other publications that are not produced for purposes of securities offerings or economic analysis. BDV and/or its affiliates have not reviewed or included data from all sources, and it cannot assure SMR of the accuracy or completeness of the data included in this Letter Agreement. Forecasts and other forward-looking information obtained from these sources are subject to the same qualifications and the additional uncertainties accompanying any estimates of future market size, revenue and market acceptance of products and services. BDV and its affiliates have no obligation to update forward-looking information to reflect actual results or changes in assumptions or other factors that could affect those statements.

If any term, provision or condition of this Letter Agreement shall be held by a court of competent jurisdiction or any other governmental agency or instrumentality thereof to be invalid, void or unenforceable, the remainder of the provisions hereof shall remain in full force and effect and this Letter Agreement shall be construed as if such invalid, void or unenforceable provision has not been contained herein. This Letter Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which, taken together, shall constitute one agreement, binding on all the parties hereto and their successors and assigns. SMR may not assign any of its rights or obligations under this Letter Agreement and any attempt at assignment shall be null and void. This Letter Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Maryland, exclusive of such state's conflict of law principles.

Under no circumstances should SMR construe this Letter Agreement or any other materials provided to it as constituting legal or tax advice. Before making any decision relating to the Loan, SMR should read all materials provided and consult with its own investment, legal, tax and other professional advisors.

S.M. Realty, LLC
Ball Street Fund, LLC
Ball Street Ventures, LLC
August 3, 2007
Page 5 of 5

The parties' signatures below indicate their agreement with the understandings set forth in this Letter Agreement as of the date first set forth above.

Very truly yours,

BD VENTURES, LLC

By: _____

Its: _____

ACKNOWLEDGED AND AGREED:

S.M. REALTY, LLC

By: _____

Its: _____

BALL STREET FUND, LLC

By: _____

Its: _____

BALL STREET VENTURES, LLC

By: _____

Its: _____

EXHIBIT NO. 2

# REVOLVING PROMISSORY NOTE

$2,750,000.00                                                    August 3, 2007

**FOR VALUE RECEIVED**, the undersigned, BD Ventures, LLC, a District of Columbia limited liability company (the "Maker"), promises to pay to the order of S. M. Real Estate, LLC, a Maryland limited liability company (the "Lender") up to the maximum principal sum of TWO MILLION SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($2,750,000.00) (the "Principal Amount"), or so much thereof as may be advanced or readvanced, with interest on the unpaid balance from the date of this Note until paid on the following terms and conditions:

The fact that the balance under this Note may be reduced to zero from time to time shall not affect the continuing validity of this Note, and the balance may be increased up to the Principal Amount after any such reduction to zero.

The Maker further agrees that, if any payment made by the Maker or any other person or guarantor is applied to this Note and is at any time annulled, set aside, rescinded, invalidated, declared to be fraudulent or preferential or otherwise required to be refunded or repaid, or the proceeds of any property hereafter securing this Note is required to be returned by Lender to Maker, its estate, trustee, receiver or any other party, including, without limitation, such Maker, under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or repayment, Maker's liability hereunder (and any lien, security interest or other collateral securing such liability) shall be and remain in full force and effect, as fully as if such payment had never been made, or, if prior thereto any such lien, security interest or other collateral hereafter securing each Maker's liability under this Note shall have been released or terminated by virtue of such cancellation or surrender, this Note (and such lien, security interest or other collateral) shall be reinstated in full force and effect, and such prior cancellation or surrender shall not diminish, release, discharge, impair or otherwise affect the joint and several obligations of Maker in respect of the amount of such payment (or any lien, security interest or other collateral securing such obligation).

**INTEREST TERMS AND PAYMENT.** Simple interest shall accrue on the Unpaid Principal Amount for each day from the date hereof until paid in full at a rate per annum equal to Ten Percent (10%).

**NOTE MATURITY.**    Unless earlier satisfied as provided herein, the entire unpaid Principal Amount and all accrued and unpaid interest thereon shall be due and payable by 5:00 p.m. Eastern Time on August 3, 2009 (the "Maturity Date").

**PLACE OF PAYMENT.** All payments of principal and interest, if any, shall be made in immediately available funds to such address(es) as the Lender may designate in writing to the Maker from time to time.

1

**INTEREST CALCULATION.** Interest under this Note shall be computed on the basis of a 360-day year and charged for the actual number of days elapsed in each interest calculation period.

**LATE CHARGE.** The Maker shall pay to the noteholder a late charge of five percent (5%) of any payment not received by the noteholder within fifteen (15) days after the payment is due.

**DEFAULT; ACCELERATION.** The occurrence of any one or more of the following events shall constitute a default hereunder (each an "Event of Default"): (a) the failure of the Maker to pay to the Lender any amounts payable under this Note on or before the Maturity Date; (b) the failure of the Maker to perform, observe or comply with any of the material provisions of this Note; (c) the liquidation, termination of existence, dissolution, or the appointment of a receiver or custodian for the Maker or any material part of its property; or (d) the institution by or against the Maker of any proceedings under the United States Bankruptcy Code or any other federal or state bankruptcy, reorganization, receivership, insolvency or other similar law affecting the rights of creditors generally, and if against the Maker, such proceedings are not discharged within ninety (90) days. Upon the occurrence of an Event of Default, the Principal Amount, together with any accrued and unpaid interest, may be declared and may become immediately due and payable, at the option of the holder of this Note, upon written notice to the Maker.

**DEFAULT RATE.** From and after the occurrence of any default, which remains uncured after the expiration of any applicable cure period, then from the date of any such default and during the continuance thereof, this Note shall bear interest at the default rate (hereafter the "Default Rate") of Twelve percent (12%) per annum. This Note shall continue to bear interest at the Default Rate until such time as the default shall have been fully cured, including the payment of any costs, expenses and attorneys' fees incurred by the holder of this Note in connection with any such default. Notwithstanding the foregoing, the interest rate set forth in this Note shall not exceed the highest rate permitted by applicable law.

**NO PREPAYMENT FEE.** The Maker reserves the right to prepay the principal amount outstanding in whole or in part at any time without penalty.

**REMEDIES FOR DEFAULT.** In the event of any default on this Note, which default shall remain uncured after the expiration of fifteen (15) days from the due date for such payment, then: (1) the entire unpaid principal under this Note shall become due and payable together with interest accrued to the date of payment, without notice, at the option of the Lender; (2) the undersigned shall pay to the Lender reasonable attorneys' fees, together with any expenses and costs which the Lender may incur in connection with the collection of any monies due under this Note or in connection with the enforcement of any right under this Note or under any other agreement related to the loan evidenced hereby; and (3) the Lender may exercise any or all rights

2

and remedies which it may have under any instrument, document or agreement now or hereafter evidencing, securing or otherwise relating to the loan evidenced by this Note or now or hereafter existing at law or in equity or by statute or otherwise.

**COSTS AND EXPENSES OF COLLECTION.** In the event suit is brought to enforce this Note, then the holder of this Note shall be entitled to collect all reasonable costs and expenses of collection, including reasonable attorneys' fees.

**NOTICE OF DEFAULT.** Notwithstanding any other provisions in this Note, the holder of this Note shall take no legal action to enforce or to collect this Note, unless and until the holder of this Note shall have given written notice to Maker and any guarantor of the grounds for such enforcement or collection action and Maker or any guarantor shall have failed to cure such default within ten (10) days of such notice.

**JURY TRIAL WAIVER.     THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ALL MATTERS IN RESPECT TO THIS NOTE.**

**WAIVER OF PRESENTMENT, ETC.** The Maker, and any person or entity being or becoming an endorser or guarantor of this Note or the indebtedness secured hereby, and its or their heirs, personal representatives, successors and assigns, waive diligence, presentment, protest, notice of dishonor, demand for payment, extension of time for payment, notice of acceptance of this Note or non-payment at maturity, and indulgence and notice of any kind and further waives the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived giving the Maker, and any person or entity being or becoming an endorser or guarantor of this Note or the indebtedness secured hereby, and their heirs, personal representatives, successors and assigns, any right or privilege of exemption, homestead rights, stay of execution or supplementary proceedings, or other relief from the enforcement of a judgment or related proceedings on a judgment. This Note shall be the joint and several obligations of all of the Makers, sureties, guarantors, and endorsers and shall be binding upon them and their personal representatives, successors and assigns.

**NOTICE.** All notices, requests and other communications to a party hereunder shall be in writing and shall be given to such party at its address as set forth on the signature page hereof or such other address as such party may hereafter specify for that purpose by notice to the other. Each such notice, request or other communication shall be effective: (i) if given by certified or registered mail, return receipt requested when such communication is deposited in the U.S. mails postage prepaid, addressed as aforesaid; or (ii) if given by any other means, when delivered at the address specified in this paragraph. Notwithstanding the foregoing, the interest rate set forth in this Note shall not exceed the highest rate permitted by applicable law.

**AMENDMENTS AND WAIVERS.** Any provision of this Note may be amended if such amendment is in writing and is signed by the Maker and the Lender.

**NO ASSIGNMENT; SUCCESSORS AND ASSIGNS.** Maker shall not assign this Note and any attempt at such an assignment by the Maker shall be null and void. Lender shall provide maker and any guarantor three (3) business days' prior written notice before assigning or

3

otherwise pledging or transferring its rights under this Note. This Note shall be binding upon the Maker and its successors and assigns.

**CAPTIONS.** The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope and intent of this Note.

**BUSINESS LOAN.** The Maker hereof represents and warrants that the loan evidenced hereby is obtained solely for purposes of carrying on or acquiring a business or commercial investment within the meaning of Section 12-101(c) or Section 12-103(e), Commercial Law Article, Annotated Code of Maryland.

**MARYLAND LAW.** This note shall be governed and construed under the laws of the State of Maryland. Any action to enforce or collect this Note shall be brought in the United States District Court for the District of Maryland (Southern Division) or the Circuit Court for Montgomery County, Maryland and the Maker irrevocably consents to venue in such courts.

BD VENTURES, LLC

By: _____ (SEAL)

Title: Managing Member

4

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

## PROMISSORY NOTE

$250,000.00                                                                    August 3, 2007

FOR VALUE RECEIVED, the undersigned, BD Ventures, LLC, a District of Columbia limited liability company (the "Maker"), promises to pay to the order of S.M. Realty, LLC, a Maryland limited liability company (the "Lender") the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) (the "Principal Amount"), with interest on the unpaid balance from the date of this Note until paid on the following terms and conditions:

INTEREST TERMS AND PAYMENT. Simple interest shall accrue on the Unpaid Principal Amount for each day from the date hereof until paid in full at a rate per annum equal to Ten Percent (10%).

NOTE MATURITY. Unless earlier satisfied as provided herein, the entire unpaid Principal Amount and all accrued and unpaid interest thereon shall be due and payable by 5:00 p.m. Eastern Time on August 3, 2009 (the "Maturity Date").

PLACE OF PAYMENT. All payments of principal and interest, if any, shall be made in immediately available funds to such address(es) as the Lender may designate in writing to the Maker from time to time.

INTEREST CALCULATION. Interest under this Note shall be computed on the basis of a 360-day year and charged for the actual number of days elapsed in each interest calculation period.

LATE CHARGE. The Maker shall pay to the noteholder a late charge of five percent (5%) of any payment not received by the noteholder within fifteen (15) days after the payment is due.

DEFAULT; ACCELERATION. The occurrence of any one or more of the following events shall constitute a default hereunder (each an "Event of Default"): (a) the failure of the Maker to pay to the Lender any amounts payable under this Note on or before the Maturity Date; (b) the failure of the Maker to perform, observe or comply with any of the material provisions of this Note; (c) the liquidation, termination of existence, dissolution, or the appointment of a receiver or custodian for the Maker or any material part of its property; or (d) the institution by or against the Maker of any proceedings under the United States Bankruptcy Code or any other federal or state bankruptcy, reorganization, receivership, insolvency or other similar law affecting the rights of creditors generally, and if against the Maker, such proceedings are not discharged within ninety (90) days. Upon the occurrence of an Event of Default, the Principal Amount, together with any accrued and unpaid interest, may be declared and may become immediately due and payable, at the option of the holder of this Note, upon written notice to the Maker.

1

**DEFAULT RATE.** From and after the occurrence of any default, which remains uncured after the expiration of any applicable cure period, then from the date of any such default and during the continuance thereof, this Note shall bear interest at the default rate (hereafter the "Default Rate") of Twelve percent (12%) per annum. This Note shall continue to bear interest at the Default Rate until such time as the default shall have been fully cured, including the payment of any costs, expenses and attorneys' fees incurred by the holder of this Note in connection with any such default. Notwithstanding the foregoing, the interest rate set forth in this Note shall not exceed the highest rate permitted by applicable law.

**NO PREPAYMENT FEE.** The Maker reserves the right to prepay the principal amount outstanding in whole or in part at any time without penalty.

**REMEDIES FOR DEFAULT.** In the event of any default on this Note, which default shall remain uncured after the expiration of fifteen (15) days from the due date for such payment, then: (1) the entire unpaid principal under this Note shall become due and payable together with interest accrued to the date of payment, without notice, at the option of the Lender; (2) the undersigned shall pay to the Lender reasonable attorneys' fees, together with any expenses and costs which the Lender may incur in connection with the collection of any monies due under this Note or in connection with the enforcement of any right under this Note or under any other agreement related to the loan evidenced hereby; and (3) the Lender may exercise any or all rights and remedies which it may have under any instrument, document or agreement now or hereafter evidencing, securing or otherwise relating to the loan evidenced by this Note or now or hereafter existing at law or in equity or by statute or otherwise.

**COSTS AND EXPENSES OF COLLECTION.** In the event suit is brought to enforce this Note, then the holder of this Note shall be entitled to collect all reasonable costs and expenses of collection, including reasonable attorneys' fees.

**NOTICE OF DEFAULT.** Notwithstanding any other provisions in this Note, the holder of this Note shall take no legal action to enforce or to collect this Note, unless and until the holder of this Note shall have given written notice to Maker and any guarantor of the grounds for such enforcement or collection action and Maker or any guarantor shall have failed to cure such default within ten (10) days of such notice.

**JURY TRIAL WAIVER.** **THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ALL MATTERS IN RESPECT TO THIS NOTE.**

**WAIVER OF PRESENTMENT, ETC.** The Maker, and any person or entity being or becoming an endorser or guarantor of this Note or the indebtedness secured hereby, and its or their heirs, personal representatives, successors and assigns, waive diligence, presentment, protest, notice of dishonor, demand for payment, extension of time for payment, notice of acceptance of this Note or non-payment at maturity, and indulgence and notice of any kind and further waives the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived giving the Maker, and any person or entity being or becoming an endorser or guarantor of this Note or the indebtedness secured hereby, and their heirs, personal representatives, successors and assigns, any right or privilege of exemption, homestead rights,

2

stay of execution or supplementary proceedings, or other relief from the enforcement of a judgment or related proceedings on a judgment. This Note shall be the joint and several obligations of all of the Makers, sureties, guarantors, and endorsers and shall be binding upon them and their personal representatives, successors and assigns.

**NOTICE.** All notices, requests and other communications to a party hereunder shall be in writing and shall be given to such party at its address as set forth on the signature page hereof or such other address as such party may hereafter specify for that purpose by notice to the other. Each such notice, request or other communication shall be effective: (i) if given by certified or registered mail, return receipt requested when such communication is deposited in the U.S. mails postage prepaid, addressed as aforesaid; or (ii) if given by any other means, when delivered at the address specified in this paragraph. Notwithstanding the foregoing, the interest rate set forth in this Note shall not exceed the highest rate permitted by applicable law.

**AMENDMENTS AND WAIVERS.** Any provision of this Note may be amended if such amendment is in writing and is signed by the Maker and the Lender.

**NO ASSIGNMENT; SUCCESSORS AND ASSIGNS.** Maker shall not assign this Note and any attempt at such an assignment by the Maker shall be null and void. Lender shall provide maker and any guarantor three (3) business days' prior written notice before assigning or otherwise pledging or transferring its rights under this Note. This Note shall be binding upon the Maker and its successors and assigns.

**CAPTIONS.** The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope and intent of this Note.

**BUSINESS LOAN.** The Maker hereof represents and warrants that the loan evidenced hereby is obtained solely for purposes of carrying on or acquiring a business or commercial investment within the meaning of Section 12-101(c) or Section 12-103(e), Commercial Law Article, Annotated Code of Maryland.

**MARYLAND LAW.** This note shall be governed and construed under the laws of the State of Maryland. Any action to enforce or collect this Note shall be brought in the United States District Court for the District of Maryland (Southern Division) or the Circuit Court for Montgomery County, Maryland and the Maker irrevocably consents to venue in such courts.

BD VENTURES, LLC

By: _____ (SEAL)

Title: _Manager_

3

# EXHIBIT NO. 3

# FIRST AMENDMENT TO MEMORANDUM OF UNDERSTANDING

**THIS FIRST AMENDMENT TO MEMORANDUM OF UNDERSTANDING** (this "Amended MOU") is made effective December 1, 2008 by and between **BRIAN DAVIS ("Brian"), CHRISTIAN LAETTNER ("Christian")** and **SHAWNE MERRIMAN ("Shawne").**

## RECITALS:

A.  Brian and Christian own and/or control interests in real property and in real estate development projects or planned real estate development projects through various partnerships and limited liability companies (the "Real Estate Projects").

B.  On or about August 3, 2007, Shawne borrowed Three Million and No/100 Dollars ($3,000,000) from Wachovia Bank, N.A. ("Wachovia" and the "Wachovia Debt") and lent that same amount (the "Loan") to BD Ventures, LLC, an entity owned and controlled by Brian and Christian. The Loan is evidenced by two promissory notes executed by BD Ventures, LLC, one in the principal amount of Two Million Seven Hundred Fifty Thousand and No/100 Dollars ($2,750,000) and one in the principal amount of Two Hundred Fifty Thousand and No/100 Dollars ($250,000) (the "Promissory Notes"). The Promissory Notes are pledged as collateral to Wachovia until such time as Shawne's debt to Wachovia has been repaid in full.

C.  Brian, Christian and Shawne wish to convert the Loan to an equity investment in the Real Estate Projects ("Shawne's Investment").

D.  Currently, the Promissory Notes are due and payable on August 31, 2009 and accrue interest at Ten percent (10%), which accrued interest is payable on August 31, 2009.

E.  Brian and Christian wish to (i) assume the Wachovia Debt in its entirety, (ii) pay the Wachovia Debt on a current basis until the assumption of the Wachovia Debt can be effectuated and (iii) set forth the allocation of Shawne's ownership interest in the Real Estate Projects based on Shawne's Investment.

F.  It is the intent of Brian, Christian and Shawne that Shawne shall participate to the extent of his pro rata interest, pari pasu with Brian and Christian in the same entities as set forth herein in which they hold their ownership interests.

G.  The terms of this Amended MOU shall be incorporated into the organizational documents for the Real Estate Projects, but until such time shall govern the understanding of the parties with respect to Shawne's Investment.

## TERMS AND CONDITIONS:

NOW THEREFORE, for good and valuable consideration the legal sufficiency of which is acknowledged and for the exchange of mutual covenants herein, the parties agree as follows:

1.  **Allocations of Shawne's Ownership Interest in the Real Estate Projects.**  The parties agree that the terms of this MOU shall be included in the respective entity agreements described below to which Shawne will become a party, and that Shawne shall maintain an ownership interest in the Real Estate Projects as follows:

(a)  Atlanta – East Village.  Brian and Christian have formed a limited liability company in Georgia known as Panola Development Partners, LLC ("PDP LLC"). PDP LLC is negotiating the terms of a contract to purchase a 117 +/- development site in Dekaulb County, Georgia with Salem Bible Church (the "ATL Property"). PDP LLC will own and develop the ATL Property or will form a partnership for such purposes. The parties agree that Eight Hundred Thousand and No/100 Dollars ($800,000) of Shawne's Investment shall be allocated to PDP LLC, Shawne's capital account in the PDP LLC shall reflect such allocation, and Shawne shall own ten percent (10%) of PDP LLC.

(b)  Durham – West Village.  Brian and Christian own a real estate development company known as Blue Devils Ventures, LLC ("BDV"). BDV has been developing an approximately 2.5 million square foot development in Durham, North Carolina known as West Village ("West Village"). As part of the West Village project, BDV intends to build a condominium development (the "West Village Condos"). BDV will form a partnership in North Carolina (the "West Village Condos Partnership") the purpose of which shall be to establish economic interests for the ownership and development of the West Village Condos. The parties agree that Eight Hundred Thousand and No/100 Dollars ($800,000) of Shawne's Investment shall be allocated to the West Village Condos Partnership, Shawne's capital account in the West Village Condos Partnership shall reflect such allocation, and Shawne shall own ten percent (10%) of the limited partnership interests of the West Village Condos Partnership.

(c)  BDV also owns an industrial site located on Wicomico Street in Baltimore, Maryland consisting of approximately twenty (20) acres (the "Baltimore Property"). BDV will form a partnership in Baltimore (the "Baltimore Partnership") the purpose of which shall be to establish

economic interests for the ownership and development of the Baltimore Property. The parties agree that One Million Four Hundred Thousand and No/100 Dollars ($1,400,000) of Shawne's Investment shall be allocated to the Baltimore Partnership, Shawne's capital account in the Baltimore Partnership shall reflect such allocation, and Shawne shall own ten percent (10%) of the Baltimore Partnership.

(d)  <u>Washington, DC – Mozart Square.</u>  Brian and Christian have formed a limited liability company in Washington, DC known as Mozart Square, LLC ("MS LLC"). MS LLC intends to enter into a contract to purchase the former Italian Embassy located at 2700 16th Street, NW (the "DC Property"). MS LLC intends to subdivide the DC Property into two (2) record lots so that the rear lot may be developed into nine (9) mini-mansions for sale, and so that the main embassy structure located on 16th Street can be sold by MS LLC to The Brian and Marcia Davis Trust (or designee) for a of one-half (1/2) of the purchase price of the Property. The parties agree that none of Shawne's Investment shall be allocated to MS LLC, Shawne's capital account in MS LLC shall reflect such allocation, and Brian, Christian and Shawne each shall own roughly twenty-five percent (25%) of the total membership interests of MS LLC, but such membership interests may be reduced, pro rata, to the extent additional equity is raised by MS LLC. Brian, Shawne and Christian (or entities established by each of them) shall share one hundred percent (100%) of the development fees netted after deducting reasonable overhead and out-of-pocket expenses related to the purchase of the Property and/or to the development generated by the development of the nine (9) mini-mansions (which overhead and expenses shall not include payments, salaries or distributions to Brian, Shawne or Christian without the written consent of all three) in proportion to their respective membership interests in MS LLC. In exchange for the payment of such development fees, Shawne agrees to attend development team meetings (in person or telephonically) and attend public relations and selected community events to promote the development of the project.

(e)  In the event one or more of the foregoing Real Estate Projects are not developed for any reason, Shawne's Investment in such Project or Projects shall be transferred, at Shawne's option, to one or more other real estate projects undertaken by Brian or Christian (or entities in which they have an interest) on terms and conditions agreed to by the parties in good faith, but in no event less favorable than the terms of this Amended MOU.

2.  **Preference on Equity Investment.**

(a)  In addition to the economic interests set forth in Paragraph 1 above, Shawne shall earn a ten percent (10%) simple annual preferred return on the amount of his investment. The preferred return shall accrue and be

3

paid from distributable cash flow and/or profits as a priority over the distribution of cash flow/profits to others who also hold economic interests in the Real Estate Projects; provided, however, that Brian and Christian shall each have the right to pay additional investors a preferred return on a pro rata basis calculated by dividing each preferred investor's investment that receives a preferred return by the sum of all investments in a particular Real Estate Project that receive a preferred return, and the payment of such preference shall be treated with equal priority with the payment of the preference provided in this Paragraph 2. The payment of developer's fees and reimbursement of out-of-pocket expenses to Brian, Shawne and Christian or to other development managers shall be given a priority of the payment of the preference set forth in this Paragraph 2.

(b)     Provided Brian and Christian cause the Wachovia Debt to be assumed in its entirety and until such time as the assumption of the Wachovia Debt is effectuated the Wachovia Debt is paid on a current basis (commencing December 1, 2008), the foregoing provisions of Section 2.(a) shall not apply. For the purposes of this Amended MOU, "assumption of the Wachovia Debt" means (i) the agreement of Wachovia to the transfer of the entire Wachovia Debt obligation to Brian and Christian (or an entity on their behalf) and the complete release of Shawne from any further obligation under the Wachovia Debt or (ii) the full and complete payment of the Wachovia Debt by Brian and Christian (or an entity on their behalf).

## 3.     Term of Investment.

(a)     In addition to the payment to Shawne of the share otherwise payable as a result of Shawne's Investment pursuant to Paragraphs 1 and 2, above, the Real Estate Projects shall return the amount of Shawne's Investment in the Real Estate Projects, as a return of capital, together with interest accrued on the Promissory Notes (the "Repayment Amount"), on or before March 30, 2009 (the "Term"). Shawne agrees that until the Promissory Notes are paid in full, all monies paid by Brian and Christian or the Real Estate Projects as a return of capital on Shawne's Investment, shall be used to repay the Wachovia loan.

(b)     Provided Brian and Christian cause the Wachovia Debt to be assumed in its entirety and until such time as the assumption of the Wachovia Debt is effectuated the Wachovia Debt is paid on a current basis (commencing December 1, 2008), the foregoing provisions of Section 3.(a) shall not apply.

(c)     Receipt by Shawne of the Repayment Amount or the assumption of the Wachovia Debt by Brian and Christian shall be treated as a return of capital on Shawne's investment. Shawne's capital accounts in the Real Estate Projects shall be reduced by the amount of the return of capital on

4

Shawne's Investment, but shall not be reduced below zero, subject to application of applicable US treasury Regulations..

(d) Upon the first to occur of (i) the assumption of the Wachovia Debt or (ii) the return of the entire Repayment Amount to Shawne, he shall cause the Promissory Notes to assigned to Wachovia as collateral for the assumption (provided such assignment is without recourse to Shawne), or marked "Cancelled" and returned to Brian and Christian.

4. **Additional Payment.** In addition to the allocation of interests and the payments otherwise payable on Shawne's behalf pursuant to Paragraphs 1, 2 and 3, above, and notwithstanding anything to the contrary in the Promissory Notes, Brian and Christian shall pay to Shawne, on or before December 15, 2008, the amount of Seventy-Two Thousand and No/100 Dollars ($72,000), which payment shall be applied against the Loan.

5. **Assumption of Wachovia Debt.**

(a) Brian and Christian shall use commercially reasonable efforts to assume the Wachovia Debt in its entirety (to include the release of Shawne from any liability in relation to the Wachovia Debt). Shawne shall not be required to personally guaranty or pledge any of his assets in connection with the assumption of the Wachovia Debt.

(b) Until such time as the Wachovia Debt is assumed by Brian and Christian, they shall timely pay to Shawne on a monthly basis the amount due from Shawne to Wachovia on the Wachovia Debt. Shawne shall cause his accountants to promptly provide statements of account to Brian and Christian as they make payments with respect to the Loan.

(b) The Promissory Notes shall remain in full force and effect until such time as the Wachovia Debt has been assumed or the Loan has been repaid in its entirety; provided, however, that the parties agree that the Promissory Notes shall be due and payable, together with accrued interest, on or before March 30, 2009. Shawne shall cause his accountants to promptly provide statements of account to Brian and Christian as they make payments with respect to the Loan.

6. **Additional Interests.** As additional consideration for Shawne's Investment, Brian and Christian shall cause Shawne to receive an ownership interest in the DC United team franchise and an ownership interest in the Memphis Grizzlies team franchise, in a percentage amount yet to be determined by the parties in good faith. Subject to successful bids under pending or anticipated RFPs, Brian and Christian also intend that, as additional consideration for Shawne's Investment, Shawne shall receive an ownership interest in prospective projects in Philadelphia, Washington, DC, and Groton, in a percentage amount yet to be determined by the parties in good faith. The subject of

this Paragraph 6 shall be set forth in a separate memorandum of understanding, the terms of which shall be determined by the parties in good faith.

7. **Entire Agreement.** The parties agree that this Amended MOU incorporates all prior written and oral agreements, and that the terms of this Amended MOU supersede all other prior written and oral agreements, with respect to Atlanta – East Village, Durham – East Village, Baltimore – West Village and Washington, DC – Mozart Square. Any changes to the terms of this Amended MOU must be made in writing signed by both of the parties hereto. This Amended MOU shall govern the relationship of the parties.

8. **Governing Law.** The provisions of this Amended MOU shall be governed by and construed in accordance with the laws of the District of Columbia without regard to any conflict of law provision.

9. **Validity.** In the event that all or a portion of any provision of this Amended MOU shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Amended MOU.

10. **Execution in Counterparts.** This Amended MOU may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of such shall together constitute one and the same instrument.

11. **Paragraph Headings.** The paragraph headings in this Amended MOU are for convenience only, form no part of this Amended MOU and shall not affect its interpretation.

IN WITNESS WHEREOF, the parties hereto have caused this Amended MOU to be executed effective as of the date first written above.

WITNESS:

_____          _____
                                   Brian Davis


_____          _____
                                   Christian Laettner


_____          _____
                                   Shawne Merriman