IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| **S.M. REAL ESTATE, LLC, et al** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **Case No.8:09-cv-00978-RWT** |
| | § | |
| **CHRISTIAN LAETTNER, et al** | § | |
| | § | |
| **Defendants** | § | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, Christian Laettner, Brian Davis, and B D Ventures, LLC, by and through their undersigned counsel, and for their Opposition to the Plaintiffs' Motion for Summary Judgment state:

As demonstrated below, there are genuine issues of material fact which preclude the entry of summary judgment.

### I.     BACKGROUND

The August 9, 2010 affidavit of Shawne Merriman states that, "Pursuant to a letter agreement, on August 3, 2007, S.M. Real Estate loaned B D Ventures, LLC a total of $3 million…" According to Exhibit 1 of Mr. Merriman's affidavit, this August 3, 2007 letter agreement specifically provides that the projects for which the loan proceeds are intended "…would be owned by BSF." (Merriman aff'd.,   ¶ 2) The entity referred to in this letter agreement as "BSF" is defined in the letter agreement as "Ball Street Fund,

LLC" a Delaware series limited liability company. (See, Exhibit 1 to Merriman aff'd., at page 1.)[1]

With respect to the entity Defendant in this action, B D Ventures, LLC, the August 3, 2007 letter agreement specifically provides:

> "BVD (sic)[2] will not own any interest in the Projects or have any claim thereto except for its unsecured claim against BSF under the BSF note.  SMR understands and agrees that, while repayment of the BVD notes is not contingent upon BSF successfully developing the Projects, if BSF is unsuccessful in developing the Projects, BVD may not be repaid under the BSF note and SMR can lose the entire amount of the loan."

This August 3, 2007 letter agreement also contains express "forward-looking statements" which are recognized as within the meaning of the Private Security's Litigation Reform Act of 1995.

SM Realty, LLC also confirmed that this letter agreement "involve(s) risks and uncertainties, many of which are beyond BDV's control." (See Exhibit 1 to the Merriman affidavit on page 3, ¶ 3).  Among such risk factors, the letter agreement recognizes the following:

- "the availability and adequacy of cash flow to meet requirements;
- economics, competitive, demographic, business and other conditions in relevant markets;
- changes in laws, regulations or taxes;
- actions taken or not taken by third-parties, including suppliers and contractors, as well as legislative, regulatory, judicial and other governmental authorities;
- competition in the real property industry and the development of other projects in the area;

---

[1] Because the copy of the letter agreement attached at Exhibit 1 to the Merriman affidavit is illegible, a legible copy is attached hereto as Exhibit Number 1.

[2] "BVD" is a typographical error, which was mistyped instead of "BDV"; "BDV" is defined on page 1 of the letter agreement as B D Ventures, LLC, a Defendant in this action.

- the loss of or failure to obtain any license or permit;
- the loss of the Project due to casualty, weather, mechanical failure or any extended or extraordinary maintenance or Inspection that may be required;
- the availability of additional capital to support capital improvements and development; and
- other factors discussed under the section entitled "Loan Risks" on Exhibit B hereto."

In addition, as the August 3, 2007 letter agreement provides at page 4 of 5, B D Ventures, LLC expressly advised S.M. Real Estate, LLC that it could not assure that its plans, intentions and expectations would be achieved, and that all the cautionary statements in the letter agreement qualified all forward-looking statements attributable to B D Ventures, LLC or persons acting on its behalf.

The funding provisions of the letter agreement called for the $3 million to be loaned in installments. In fact, the loan was funded in installments. The installments of this loan were not funded by Plaintiffs until after the August 3, 2007 date on the Revolving Promissory Note, a copy of which is attached as part of Exhibit 2 to the Merriman affidavit. Nowhere in Plaintiffs' memorandum of law do Plaintiffs advise the Court when they claim Plaintiffs funded these loans. The letter agreement allows for 120 days for the $2.75 million to be funded. Nothing in Plaintiffs' submission indicates when the notes in fact were funded. This omission in Plaintiffs' motion has a direct effect on the calculation of interest. Given the amount of funds at issue, this omission presents a genuine issue of material fact as to the calculation of damages. Plainly, interest on a loan cannot begin to accrue until a loan is funded.

In addition, at page 4 of the memorandum of law in support of their Motion for Summary Judgment, Plaintiffs represent to the Court that *"the parties"* executed a First Amendment to Memorandum of Understanding (AMOU). This is not an accurate

3

statement of fact. As Exhibit No. 5 to Mr. Merriman's affidavit reveals, this document was *not* executed by or on behalf of Defendant B D Ventures, LLC. Plaintiffs' memorandum of law also states that the AMOU was signed by *"the Defendants." Id*. This too is incorrect. B D Ventures, LLC, which is a party and a Defendant, did not sign the AMOU.

The import of both the above incorrect statements, as well as the absence of any funding date, is relevant to, *inter alia*, the due date of the two promissory notes at issue as well as to the calculation of claimed interest. The notes *do not* contain a due date of March 30, 2009. Nothing executed by Defendant B D Ventures, LLC alters the express due date set forth in either of the two promissory notes which are at issue. Plaintiffs argue that the due dates for the alleged obligations of B D Ventures, LLC was changed to March 30, 2009. Both notes contain integration clauses requiring that, "Any provision of this note may be amended if such amendment is in writing and is signed by the Maker and the Lender." (*See*, page 3 of both the notes contained in Exhibit 2 to Merriman's Affidavit) No such writing signed by the maker of the notes, B D Ventures, LLC, exists.

The two promissory notes which are the subject of this suit did not obligate B D Ventures, LLC to pay $3 million on or before March 30, 2009. The personal guarantees by Messrs. Laettner and Davis obligated these individual Defendants to make payment, "Upon default of the Borrower with respect to any of its obligations or liabilities to the Lender..." (*See*, Exhibits 3 and 4 to Merriman's Affidavit, at page 3 of each). The "borrower" was B D Ventures, LLC. Because the first Amendment to Memorandum of Understanding (AMOU) was *not* signed by B D Ventures, LLC, and because it is *not* a party to the AMOU, it can not and did not amend the notes.

4

The above factual inaccuracies and misstatements which imbue Plaintiffs' motion, lead to further inaccuracies as to the amount which Plaintiffs claim to be due pursuant to the two promissory notes. All Plaintiffs' damage calculations are predicated on a March 30, 2009 due date for each of the notes and Plaintiffs fail to advise the Court when the installments of the $2.75 million revolving loan were funded. Because Plaintiffs' factual predicates are in error, Plaintiffs' resulting damage claims are also factually wrong.

## II.   STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; see also *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56 (c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof

concerning an essential element...necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323. Thus, on those issues on which a party has the burden of proof, it is his or her responsibility to produce an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson,* 477 U.S. at 256; *Celotex Corp.,* 477 U.S. at 324.

### III.   ANALYSIS

Counts I, III, IV and V of Plaintiffs' First Amended Complaint are not proper subjects for summary judgment as there are genuine issues of material fact which involve each. As set forth above, these issues include the due dates on the two promissory notes and the damages claimed by plaintiff, the calculation of which is dependent upon an incorrect due date. This gives rise to genuine issues as to the damages claimed in plaintiffs' motion. The absence of funding dates for the installments of $2.75 million also gives rise to a genuine issue as to plaintiffs' damage calculations.

The presence of integration clauses in the two notes, as well as the absence of any writing by B D Ventures, LLC altering the notes' due dates, give rise to material facts which involve genuine issues and prevent summary judgment. Maryland law upholds the validity of integration clauses, which are also referred to as merger clauses. *See Greenfield v. Heckenbach,* 155 Md. App. 108, 797 A.2d 63 (2002), *cert. denied,* 370 Md. 269, 805 A.2d 266 (2002).

In an action for damages such as the instant matter, parole evidence, as well as writings which are not in accord with the merger/integration clause, are not admissible for purposes of varying the writing. *Canatella v. Davis,* 264 Md.190, 286 A.2d 122 (1972). Plaintiffs' effort here to attempt to vary the terms of two promissory notes with a

6

writing which has not been signed by either the Lender or the Maker of the notes, is unavailing under governing law.

Moreover, it is widely recognized that a personal guarantee of a note is "to be strictly construed, and the language of the guarantee clause must be interpreted 'most strongly' against the person at whose insistence it was written. *See, Connecticut General Life Ins. Co. v. Punia*, 884 F.Supp. 148, 155 (D.N.J.1995)." In *Air Sea International Forwarding, Inc. v. Global Imports and Trading, Inc.*, 2008 WL 5070702 (D.N.J.) the Court determined:

> "Strict construction of a guarantee is a universally accepted principle. For example, Michigan law instructs that although the Court of Appeals looks to the language of the contract, courts will not read a guarantee contract expansively. *Mazur v. Young*, 507 F.3d 1013, 1018 (6th Cir.2007). Similarly in New York, a guarantee is to be interpreted in the strictest manner. A guarantor cannot be bound beyond the express terms of a guarantee. *United Natural Foods, Inc. v. Burgess*, 488 F.Supp.2d 384, 394 (S.D.N.Y.2007)."

In addition, by Count II of the First Amended Complaint, Plaintiffs seek specific performance relating to some of the various "interests" set forth in the AMOU. It is attached as Exhibit 5 to the Affidavit of Shawne Merriman. It contains a choice of law provision indicating it is to be governed and construed in accordance with the laws of the District of Columbia. (*See*, ¶ 8)

Under the law of the District of Columbia, "the determination whether an enforceable contract exists, when based on the contact documents, is a question of law..." *Kramer Associates v. Ikam, LTD*, 888 A.2d 247, 251 (D.C.2005) citing to *Rosenthal v. National Produce Co.*, 573 A.2d 365, 369 n.9 (D.C.1990). Plaintiffs, therefore, have the burden to establish that a specifically enforceable contract exists. *Jack Baker, Inc.* v. *Office Space Development Corp.*, 664 A.2d 1236, 1238 (D.C.1995).

*EastBank Inc. v. The Georgetown Park Associates II, L.P.*, 940 A.2d 1996

(D.C.2008), provides a summary of the law of the District of Columbia as relates to the

existence and validity of a contract, noting:

> "For a contract to be enforceable, "there must be '(1) an agreement to all
> material terms, and (2) intention of the parties to be bound.'" *Duffy v.
> Duffy*, 881 A.2d 630, 634 (D.C.2005) (quoting *Jack Baker*, 664 A.2d at
> 1238). In addition, mutuality of obligation must exist. *Order of AHEPA
> v. Travel Consultants, Inc.*, 367 A.2d 119, 125 (D.C.1976). "A contract
> must be sufficiently definite as to its material terms (which include, e.g.,
> subject matter, price, payment terms, quantity, quality, and duration) that
> the promises and performance to be rendered by each party are reasonably
> certain." *Rosenthal*, 573 A.2d at 370 (citing J.D. CALAMARI & J.M.
> PERILLO, THE LAW OF CONTRACTS, § 2-13, at 43-44 & n. 17 (2d
> ed.1977)). However, "'[a]ll the terms contemplated by the agreement
> need not be fixed with complete and perfect certainty for a contract to [be
> enforceable].'" *Rosenthal*, 573 A.2d at 370 (quoting *V'Soske v. Barwick*,
> 404 F.2d 495, 500 (2d Cir.1968)). "All agreements have some degree of
> uncertainty." *Id.* A contract is enforceable if it is "sufficiently definite so
> that the parties can be reasonably certain as to how they are to perform."
> *Duffy*, 881 A.2d at 638. Moreover, "the terms of the contract [must be]
> clear enough for the Court to determine whether a breach has occurred and
> to identify an appropriate remedy..." *Affordable Elegance Travel, Inc. v.
> Worldspan , L.P.*, 774 A.2d 320, 327 (D.C.2001)."

In analyzing Plaintiffs' argument, it is submitted that the AMOU upon which

Plainitffs' specific enforcement claim is based concerns a form of preliminary agreement,

and not a valid, enforceable agreement because it is not sufficiently definite as to material

terms. Preliminary agreements have led to "much misunderstanding, litigation and

commercial chaos." 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS §1.16, p.46

(rev R.ed (1993)). It is recognized that some preliminary agreements are signed with the

belief that they are commitments and, assuming this belief is shared by the parties, the

letter is a memorial of a contract. *Id.* In other cases, the parties may not intend to be

bound until further writing is completed. *Id.* As explained below, the AMOU at issue

certainly contemplated other written agreements including the purchase of real property

and the creation of various partnerships.

Corbin has classified such preliminary agreements into four separate categories. *See* CORBIN ON CONTRACTS, supra, at §2.9, p. 157-58. Each of these four categories is described by Corbin as follows:

> "(1) At one extreme, the parties may say specifically that they intend not to be bound until the formal writing is executed, or one of the parties has announced to the other such an intention. (2) Next, there are cases in which they clearly point out one or more specific matters on which they must yet agree before negotiations are concluded. (3) There are many cases in which the parties express definite agreement on all necessary terms, and say nothing as to other relevant matters that are not essential, but that other people often include in similar contracts. (4) At the opposite extreme are cases like those of the third class, with the addition that the parties expressly state that they intend their present expressions to be binging agreement or contract; such an express statement should be conclusive on the question of their 'intention.'" *Id.* (internal citations omitted). A valid contract generally has been made if a letter of intent properly falls within either the third or the fourth category. *Id.* at 158.

It is submitted that upon analysis of the AMOU, its signatories did not intend to

be bound by the memorandum alone and that the AMOU clearly points to specific

matters on which the parties must agree before a specifically enforceable agreement

could exist. It is submitted that the AMOU is in the nature of a writing described by

Corbin in category (2) above, and not a specifically enforceable agreement.

Various courts have identified several factors to be considered in attempting to

determine whether the parties have manifested an intent to be bound. In *Teachers Ins.*

*and Annuity Ass'n. v. Tribune Co.,* 670 F.Supp. 491, 499-503 (S.D.N.Y.1987), the Court

set forth five such factors that have been widely cited by other courts, as follows: (1) The

language of the preliminary agreement; (2) the existence of open terms; (3) whether the

partial performance has occurred; (4) the context of the negotiations, and; (5) the custom

of such transactions, such as whether a standard form contract is widely used in similar transactions. *See* also *Burback Broadcasting Co. of Dell the Alcons Radio*, 278F. 3d 401, 408 (4th Cir.2002). See also *Cochran v. Norkunas*, 398 Md 1, 919 A.2d 700, 708-709 (2007).

As the Court in *Cochran v. Norkunas, supra*, observed, comment (c) to the *Restatement (Second) of Contracts* identified additional factors to be considered, as follows: (1) Whether the agreement has few or many details; (2) whether the amount involved is large or small, and; (3) whether it is common or an unusual contract. (citing to *Restatement (Second) of Contracts*, section 27, comment c.; 398 Md. 1, 919 A.2d 700, 709.

Applying the above legal authorities to the AMOU at issue here to determine whether it expresses an intention to be bound, it is respectfully submitted that a reasonable person viewing it concerning the three distinct "interests" Plaintiffs' claim would conclude it is a preliminary agreement only; that there are many open terms; that there has been no partial performance; and that there are numerous specific matters on which the parties must yet agree before a definitive, enforceable agreement is concluded .[3] In particular, at the time the AMOU was executed, there is no whatsoever evidence that an authorizing resolution by or on behalf of any existing entity (LLC or Partnership) approving the addition of an additional member or partner ever took place; there were no conveyance documents executed i.e, no assignment of any membership or partnership interest, no subscription agreement, no deed or lease to the real properties which are the subjects of the claimed interests claimed by plaintiff, nor any other cognizable evidence of an

---

[3] Plaintiffs have forgone any claim to a project known generally as Washington, D.C.-Mozart's Square which is also referred to in the AMOU.

10

enforceable interest in any realty. The AMOU plainly anticipates that some such interest with some particularized detail was expected come into existence before any agreement pertaining to an interest in a partnership or an LLC interest could even arguably be enforceable.

More specifically, applying the above legal authorities to the Atlanta East Village "interest" Plaintiff claims, reveals that another entity-- an LLC-- which is not a party to this action, and which did not sing the AMOU was apparently *negotiating* the terms of a contract to purchase a site in "Dekaulb" County, Georgia. The AMOU suggests that an entity, PDP LLC ,"*will* own and develop" or "*will* form a partnership for such purposes" as to this site. It is submitted that there is no genuine dispute that no such contract has ever been entered into relating to this 117-acre property in Georgia. The AMOU at issue expressly anticipates that before any "interest" may accrue, that several material facts must occur--not the least of which is the purchase of real property, and the creation of the partnership, all as the AMOU expressly envisioned. Plaintiffs claim to an interest in a partnership which does not exist, as to property in which a non-existent entity has no ownership interest, is not a specifically enforceable agreement. It is submitted that, as to this Atlanta "interest", the AMOU represents the very sort of preliminary agreement which amounts, at best, to an "agreement to agree" in the future, based upon events which may or may not occur, and which in fact to date have not occurred. Based upon the legal authorities outlined above, this claimed interest in a non-existent concept-- Atlanta East Village--is not the subject of a specifically enforceable agreement.

With regard to the "interest" concerning Durham West Village, the AMOU references that a separate LLC-- Blue Devils Ventures, LLC-- *intends to build* a condominium

development in the future referred to as the West Village Condos. The memorandum also indicates that BDV *will* form a partnership. No such building has occurred. No such partnership exists. In summary, the provisions of the AMOU pertaining to this purported interest in Durham West Village is not specifically enforceable. It addresses future events involving another entities' intent to build--not the intent of the parties to the AMOU-- and the formation of a partnership involving a separate LLC which is not a party to this lawsuit in which Plaintiffs claim an interest. Based upon the forgoing, it is submitted that this AMOU, as relates to any interest in an unformed partnership concerning a condominium to be built in the future by other non-parties to the AMOU and to this lawsuit, is not a specifically enforceable agreement as to these Defendants.

A reasonable person reviewing the AMOU would conclude that further, additional and material steps are required in order for an individual to become a party to an LLC or a partnership; there is no authorizing resolution by any LLC or partnership; a purchase agreement by the entity for the real property must entered into. Construction agreements must be put in place. Funding for both purchase and construction must be in place. Because of the preliminary nature of this memorandum which reveals numerous open terms as outlined herein, the AMOU is not a specifically enforceable agreement. It is, at best, a preliminary agreement to agree which is not specifically enforceable.

The next "interest" at issue is a claim to an interest in a partnership which B D Ventures "*will form*" in Baltimore. No such partnership has been formed. Clearly the AMOU anticipates that a future partnership agreement with unidentified partners and unidentified interests is to be entered into. B D Ventures, LLC is not a party to this AMOU, and it is not bound by it because it is not party to it. Neither Mr. Laettner nor

Mr. Davis owns the real property which is the subject of this purported interest in some partnership. There has been no assignment of any interest either Mr. Davis or Mr. Laettner may own in any non-existent partnership. As with the above interests, there is no evidence that an as-yet-to-be-formed partnership would authorize and approve plaintiff as a partner. This claimed "interest" suffers from the same failings as the both the above claimed interests--it is a preliminary agreement to agree lacking in particulars and requiring future events to occur, and which has not been entered into by or on behalf of B D Ventures, LLC.

As to the "catch-all" provisions at ¶ (e) at page 3 of the AMOU, by its express terms, its "agreement to agree" character is highlighted. It relates to unknown and unidentified projects and entities. This "catch-all" language clearly envisions additional events and circumstances and matters which may or may not occur—and which have not occurred to date. This language does not evidence an intent to be bound as the legal authorities cited herein require. It is not a specifically enforceable agreement based upon the foregoing legal authorities.

Finally, in reviewing the AMOU on the first page of its recitals at ¶ (C), it appears that its signatories may have intended to "convert" the $3 million loan to B D Ventures, LLC into "an equity investment." In short, Plaintiffs' purport to seek not only payment of the $3 million loan pursuant to the terms of two promissory notes by B D Ventures, LLC and personal guarantees, as well as "interests" in other entities who have received no consideration. Plaintiff's argument overlooks this intent to "convert"—meaning change from one form into another. Plaintiffs have disregarded this intent-- conversion of a loan into any investment. It is not clear from the AMOU what the nature of this

"investment" is and the effect of the failure of the projects or non-exitence of the projects jupon this investment. In all events, however, his investment is not legal, valid or enforceable, and as written in the AMOU may well run afoul of numerous blue sky laws in Maryland, North Carolina and Georgia—the three states where plaintiff claims interests.

In short, beyond the AMOU's lack of enforceability, it is respectfully submitted that the Court is being requested to recognize a form of investment contract and which involves potential or prospective real estate deals with have either never come into being or are nonexistent. The Court is being asked to speculate as to what may occur in the future as to numerous specifics along the path of a possible development from financing to construction to purchase and eventually operation. The Court is being asked to declare rights among entities and partnerships which are not before the Court, and which do not exist. The relief requested, if awarded, could create clouds on titles to various real property and could harm the interests of the owners of real property none of whom are before the Court. The remedy of specific enforcement is unavailable under these circumstances for all the reasons set forth above.

## IV.    CONCLUSION

Genuine issues of material fact preclude the entry of summary judgment in favor of Plaintiffs. The funding dates for the loans are not before the Court. The due date for each of the notes in question is disputed. The amount of damages claimed in each of the counts of the First Amended Complaint which relate to the promissory notes and guaranties are also the subject of genuine disputes of material fact. The relief requested by Plaintiffs seeking specific enforcement is unavailable to Plaintiffs as a matter of law. For all the

foregoing reasons, as well as for reasons to be argued at the hearing on the subject

motion, the motion for summary judgment should be denied.

Respectfully submitted,

BRAULT GRAHAM, LLC

_/s/Daniel L. Shea_____
Daniel L. Shea, #00464
301 South Washington Street
Rockville, Maryland 20850
301-424-1060
dls@braultgraham.com
*Attorneys for Defendant B D Ventures, LLC*

## REQUEST FOR HEARING

Defendants request a hearing on the Opposition to Plaintiffs' Motion for

Summary Judgment.

_/s/Daniel L. Shea_____
Daniel L. Shea, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August 2010, a true and correct

copy of the foregoing was served via electronic transmission to counsel of record as

follows:

Roy I. Niedermayer, #03122
Arthur House, #00031
Paley Rothman Goldstein Rosenberg Eig and Cooper Chtd.
4800 Hampden Lane, Seventh Floor
Bethesda, Maryland 20814

Marc E. Kasowitz, Esq.
David E. Ross, Esq.
Rachel E. Lubert, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
*Attorneys for Plaintiffs S.M. Real Estate, LLC et al*

/s/*Daniel L. Shea*
Daniel L. Shea, Esq.