# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| S.M. REAL ESTATE, LLC and <br> SHAWNE MERRIMAN, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTIAN LAETTNER, BRIAN DAVIS, <br> and BD VENTURES, LLC, <br><br> Defendants. | Case No. RWT-09-978 |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned by Order of Reference (ECF No. 154), dated August 4, 2011, pursuant to 28 U.S.C. § 636(b)(1)(B) from the Honorable Roger W. Titus for determining: (1) what additional documents, if any, must be executed to comply with the Court's December 10, 2010 Order and Judgment; and, (2) whether Defendants Christian Laettner and Brian Davis have violated this Court's December 10, 2010 Order, and if so, what additional action should be taken by the Court. The undersigned recommends that (1) since Defendants have provided all required documents, no further action is required; and, (2) that Defendants have violated the Court's Order and should pay Plaintiffs reasonable fees and expenses incurred in Plaintiffs' efforts to obtain compliance.

### I. Undisputed Facts and Procedural History

On or about December 1, 2008, Plaintiff Shawne Merriman and Defendants Christian Laettner and Brian Davis entered into their First Amendment to Memorandum of Understanding

Agreement ("Amended MOU") (ECF No. 91) attached hereto as Exhibit 1. According to this document, Plaintiff Merriman borrowed $3 million and lent said funds to BD Ventures, LLC, an entity owned and controlled by Defendants Laettner and Davis. The stated desire of these principals was to "convert the loan to an equity investment" in various "Real Estate Projects" ("Shawne's Investment") of Defendants Laettner and Davis. In the event that any of the Real Estate Projects were not developed as planned, then Shawne's Investment was to be transferred at his option to other Real Estate Projects being conducted by said Defendants on terms that were at least as favorable to Plaintiff Merriman.

On November 18, 2010, following a hearing, the Court orally granted summary judgment on all counts of Plaintiffs' Amended Complaint. On December 10, 2010, the Court entered judgment in favor of Plaintiffs and against all Defendants (ECF No. 101)[1]. The Court ordered that judgment be entered in favor of Plaintiff S.M. Real Estate, LLC against Defendants Christian Laettner, Brian Davis and BD Ventures, LLC jointly and severally in the amount of $3,765.334.14. The Court's Order and Judgment also addressed the interests of the individual Plaintiff as follows:

> and it is further, ORDERED, ADJUDGED and DECREED that judgment shall be entered in favor of Plaintiff Shawne Merriman against Defendants Christian Laettner, Brian Davis and BD Ventures LLC, for the transfer to Shawne Merriman of the percentage interests and related capital accounts as set forth in subparagraphs (a) through (c) below,[2] and that Defendants Christian Laettner and Brian Davis are ordered to execute such documents as are necessary to confirm and effect the transfer of such interests to Shawne Merriman within ten days of the entry of this Judgment:

---

1  This Order was filed electronically on December 13, 2010.

2  Footnote 1 in the Court's Order stated, "Pursuant to Sections 1(a)-(d) of the First Amended Memorandum of Understanding, Merriman Aff. Exh. 5."

> a. With respect to the "Atlanta-East Village" project, Shawne Merriman shall receive ten percent (10%) membership interest in PDP LLC, and Mr. Merriman's capital account in PDP LLC shall be $800,000;
>
> b. With respect to the "Durham-West Village" project, Shawne Merriman shall receive a ten percent (10%) membership interest in the West Village Condos Partnership LLP, and Mr. Merriman's capital account in the West Village Condos Partnership LLP shall be $800,000;
>
> c. With respect to the "Baltimore" project, Shawne Merriman shall receive a ten percent (10%) membership interest in the Baltimore Partnership, and Mr. Merriman's capital account with the Baltimore Partnership shall be $1,400,000;

At the time the Amended MOU was executed, each of the above proposed development projects were in different stages of development. For example, the Atlanta project was at a stage where real property was under a purchase contract which contained various contingencies. Ultimately, the attempted purchase was not successful and did not proceed. The Durham-West Village Condos project and the Baltimore project have also not proceeded given the collapse of both the banking and real estate development industries in the wake of the 2008 global recession and its lasting effects.

Defendants did not appeal from the judgment, and the time for doing so has expired. See Fed. R. App. Proc. 4(a)(1)(a). Defendants failed to effect the transfers of membership interests by December 23, 2010, as required by the judgment.

On January 5, 2011, the parties appeared via teleconference before Judge Titus. During the teleconference, counsel for Defendants indicated that he needed to obtain the

services of a lawyer with appropriate expertise in order to draft the documents necessary to effect the transfers ordered by the judgment[3].

As a result of the January 5 teleconference, the Court issued a Consent Order extending the deadline for Defendants to transfer the interest described in the judgment until January 12, 2011 (ECF No. 103). Defendants failed to effect the transfers of interest and capital accounts by January 12, 2011, as required.

On January 18, 2011, counsel for Defendants electronically mailed to counsel for Plaintiffs two copies of a document titled "Confirmation." One copy bears the signature of Defendant Laettner, and the other Defendant Davis, and states:

> Pursuant to the December 13, 2010 Order and Judgment in the proceedings styled S.M. Real Estate LLC and Shawne Merriman v. Christian Laettner, et al., Case No. 8:09-cv-00978-RWT in the United States District Court for the District of Maryland, this will serve to confirm and effect the transfer of interests to Shawne Merriman as follows:
>
> (a) With respect to the "Atlanta-East Village" project, Shawne Merriman shall receive a ten percent (10%) membership interest in PDP LLC, and Mr. Merriman's capital account in PDP LLC shall be $800,000;
>
> (b) With Respect to the Durham-West Village" project, Shawne Merriman shall receive a ten percent (10%) membership interest in the West Village Condos Partnership LLP, and Mr. Merriman's capital account in the West Village Condos Partnership LLP shall be $800,000;
>
> (c) With respect to the "Baltimore" project, Shawne Merriman shall receive a ten percent (10%) membership interest in the Baltimore Partnership, and Mr. Merriman's capital account with the Baltimore Partnership shall be $1,400,000.

(ECF No. 111-4).

---

[3] The exchange with the Court is reflected on the record of the hearing held on May 16, 2011 (ECF No. 14). See transcript of hearing of May 16, 2011 ("May Tr.") at 4:16-22.

On May 16, 2011, Judge Titus held a hearing on Plaintiffs' Motion to Enforce a Judgment to Effect a Transfer of Interests, to Hold Defendants in Contempt, and for Other Sanctions. During the hearing, Judge Titus made clear that the "Confirmation" was not sufficient to comply with the judgment, (May Tr. at 11:14-14:16), noting that "this doesn't seem to be even a remote effort to comply with the order," (May Tr. at 12:9-10), that it was "not even remotely close to the kind of thing you would expect," (May Tr. at 12:19-20), and that "what was done here was not even . . . a trivial effort to have complied with the [judgment]" (May Tr. at 13:24-14:1).

At the conclusion of the hearing, the Court issued an Order stating that Defendants "SHALL PRODUCE TO PLAINTIFF all organizational and ownership documents, including documents concerning any transfers of ownership interests, pertaining to the 'Atlanta – East Village' project, PDP LLC, the 'Durham – West Village' project, West Village Condos Partnership LLP, the 'Baltimore' project and the Baltimore Partnership on or before May 23, 2011" and that "on or before June 16, 2011, Defendants Christian Laettner and Brian Davis SHALL EXECUTE such documents as are necessary to confirm and effect the transfer of interest in the above-named partnerships to Shawne Merriman, consistent with the Court's December 13, 2010 Order (ECF No. 101)." (ECF No. 138).[4]

On June 16, 2011, Defendants filed a motion requesting that the deadline for compliance be extended until June 30, 2011, based on the assertion that there had been a

---

4  The undersigned considers this Order to be part of the Court's charge to provide a recommendation to determine "What additional action should be taken by the Court." This Order of May 16, 2011 to produce organizational

misunderstanding between counsel regarding the preparation of the documents (ECF No. 143).

By correspondence dated May 20 (ECF No. 143, Exhibit 1), and July 11, 2011, Defendants provided Plaintiff's counsel, the following documents:

    A.    As to Panola Development Partners, LLC ("PDP"):

        (a)    The Request for Reinstatement Application of an Administratively Dissolved Entity; and

        (b)    The Assignment of Membership Interests in PDP, LLC to Mr. Merriman.

    B.    As to the West Village Condo Partners, LLC,:

        (a)    The Articles of Organization; and

        (b)    The North Carolina Department of the Secretary of State Limited Liability Company Information form.

    C.    As to the "Baltimore Partnership Entity,"

        (c)    The Articles of Organization for Domestic Limited Liability Company (LLC), Davis and Sons, LLC;

        (b)    The June 30, 2011, Resolution by Davis and Sons, LLC identifying Plaintiff's 10% interest and confirmation of Plaintiff's capital account in the entity; and

        (c)    The Government of the District of Columbia's Certificate of Organization for Davis and Sons, LLC.

        (d)    The IRS's June 24, 2011, EIN for Davis and Sons, LLC.

(See letter from Daniel Shea to David Ross, dated July 1, 2011, attached hereto as Exhibit 2.)

---

documents was issued due to the Court's frustration with Defendants' failure to comply with its Order of December 10, 2010.

Thereafter, by correspondence dated July 11, 2011, Defendants provided the thirty-page Operating Agreement of West Village Condo Partners, LLC pertaining to the Durham-West Village project that was prepared by North Carolina counsel with an effective date of June 30, 2011. (See letter from Daniel Shea to David Ross, dated July 11, 2011, attached hereto as Exhibit 3.)

On July 5, 2011, the Court issued an Order to Show Cause (ECF No. 149). The Court noted that it appeared from Plaintiffs' representations "that Defendants Christian Laettner, Brian Davis, and BD Ventures, LLC, have not executed real estate transfer documents as directed by the Court's December 13, 2010 Order." The Court scheduled a hearing on the Order to Show Cause for August 3, 2011. Thereafter, the Court referred this matter to the undersigned for a Report and Recommendation.

With respect to Panola Development Partners, LLC, Defendants provided an "Assignment of Membership Interests in Panola Development Partners, LLC", effective June 30, 2010. That document provides that Mr. Davis and Mr. Laettner, who are the sole members of this limited liability company, each assign a five percent interest in the company to Mr. Merriman. The document also states that Mr. Merriman's "capital account shall be credited Eight Hundred Thousand and No/100 Dollars ($800,000)." As of June 30, 2010, the assets of Panola Development Partners, LLC had a value less than $8,000,000.

With respect to the West Village Condo Partners, LLC, Defendants provided an Operating Agreement effective as of June 30, 2011. Sections 2.1 of that Agreement identifies Mr. Laettner, Mr. Davis and Mr. Merriman as the initial members of the company. Of the 100 units comprising the company, the Agreement assigns 44.5 units to Mr. Laettner, 45.5 units to

Mr. Davis, and 10.0 units to Mr. Merriman. *See* Exhibit A to Operating Agreement. The Agreement values each unit at $80,000, and therefore values Mr. Laettner's "initial capital account" at $3,560,000, Mr. Davis's "initial capital account" at $3,650,000, and Mr. Merriman's "initial capital account" at $800,000. By the terms of the Agreement, the total value of the 100 units in the company is $8,000,000. As of June 30, 2010, the assets of West Village Condo Partnership had a value less than $8,000,000.

With respect to the Baltimore project, Defendants provided documents relating to a limited liability company called "Davis and Sons, LLC" organized in the District of Columbia. The Articles of Organization for Davis and Sons, LLC are signed by Mr. Davis and his wife, Marcia Davis, and dated April 13, 2011. Defendants produced a certificate of organization for Davis and Sons, LLC that was issued on May 11, 2011, and a resolution that states:

> This resolution is made this 30 day of June 2011 by Marcia Davis (MD), Brian Davis (BD), and S.M. Real Estate, LLC (SMR), the sole members of Davis and Sons, LLC.
>
> The membership interest is as follows:
>
> MD 10%
> SMR 10%
> BD 80%
>
> MD capital account shall be deemed to be $1.4 million.
>
> SMR capital account shall be deemed to be $1.4 million.
>
> BD capital account shall be deemed to be $11.2 million.

## II. Analysis

8

**A.      What Additional Documents, If Any, Must Be Executed to Comply with the Court's December 10, 2010 Order and Judgment.**

Plaintiffs are satisfied that all corporate documents have been provided.  See transcript of October 12, 2011 proceedings ("October Tr.") (ECF No. 173) at 28:20-29:4.  Plaintiffs are also satisfied that Defendants have complied with the required corporate formalities in order to effect the transfers as ordered (October Tr. at 29:14-20).  This includes the required transfers of "percentage interests."  Accordingly, I recommend that the Court finds this issue to be resolved.

**B.      Have Defendants Laettner and Davis Violated this Court's December 10, 2010 Order, and If So, What Additional Action Should Be Taken by the Court?**

The undersigned considers this Report and Recommendation relevant to the portion of the Court's Order requiring Defendants to timely convey "percentage interests, and related capital accounts" regarding the construction projects.

**1.      Defendants Have Violated the Court's Order By Failing to Make a Timely Conveyance.**

In its simplest terms, the December 10, 2010 Order was violated when it was not complied with on or before December 23, 2010.  While Defendants did not provide the requisite corporate documents until July 2011, there are succinct periods that must be examined to determine the reasons for delay.

The record is silent about any efforts by Defendants to comply with Court's Order between December 10, 2010 and January 5, 2011.  By the time of the teleconference on January 5, 2011, trial counsel made clear that he needed the services of an attorney with real estate transactional experience to draft the necessary documents.  With the issuance of the Consent Order (ECF No. 103), the Court extended the time of compliance until January 12, 2011.  Six

9

days later, Plaintiffs provided the "Confirmation" that this Court found to be ineffective during the hearing of May 16, 2011. Accordingly, the failure to provide appropriate documents is a violation of the Court's Order for the period of December 23, 2010 through May 16, 2011.

At the hearing on May 16, 2011, the Court required the production of organizational documents to be completed by May 23, 2011, and for the "transfer of interests" to be done by June 16, 2011. The deadline for the transfer of interest was subsequently moved to June 30, 2011.

It is clear that there was a disagreement between counsel as to who was to prepare the transfer of interest documents following the hearing. By letters dated May 20, 2011 (ECF No. 143) and June 9, 2011 (ECF No. 143, Exhibit 2), Defendants' counsel was made a concerted effort to confirm that Plaintiffs' counsel was doing so. Given the miscommunication between counsel, it is my recommendation that the period of delay from May 16, 2011 until the dates of production, should not be charged to Defendants.

### 2. Defendants Have Complied with the Court's Order to Execute Documents to Reflect the Appropriate Capital Accounts.

Plaintiffs are satisfied that the transactional documents accurately and effectively ascribe to Plaintiffs the Court ordered totals for each capital account. The corporate documents provided by Defendants parrot the correct amounts for each capital account. The more interesting question is whether the creation of the capital accounts actually convey value.

Plaintiffs believe that the value of each capital account should be a fair reflection of the equitable value of each entity at the time that the entry of summary judgment was made. See October Tr. at 11:2-5. Plaintiffs believe that at the time of the execution of the Amended MOU,

10

all capital accounts were required to represent legitimate valuations of Plaintiff Merriman's financial stake in each entity. There is no dispute but that as of the time of the issuance of the "Confirmation," and continuing through the hearing date of October 12, 2011, none of these entities had any meaningful value. (October Tr. 23:10-16, 66:8-14). Plaintiffs therefore deduce that the valuations of the capital accounts is a sham.

Plaintiffs contend that before summary judgment was entered, Defendants were obligated to notify the Court that the capital accounts could not be funded in the amounts that had been ordered (October Tr. 32:6-10). To the extent the order was premised upon conditions that could no longer be satisfied due to the economic and business realities, then Plaintiffs believe that the time to notify the Court was before the entry of summary judgment.

Defendants argue that neither the Amended MOU nor the Court's Order speaks of "book value" or "value" in relation to the capital accounts. See October Tr. at 18:12-19:12. Defendants contend they were merely attempting to comply with the orders of the Court (October Tr. 20:7-11).

Irrespective of the views of either party, any assessment of damages would eventually require an assessment of the value of Plaintiff Merriman's capital accounts beginning with the date of the execution of the Amended MOU. Should the Court determine that the capital accounts reflect an equity investment, the Court may determine that said accounts dissipated with the collapse of the real estate market. If the capital accounts were of a more tangible and longstanding debt quality, then the Court may decide a restitutionary sum is required. Under either scenario, it is clear that from December 2010 through June 30, 2011, Plaintiffs incurred no economic loss due to Defendants' non-compliance with the Court's Order. The Real Estate

Projects were never realized and none of the entities involved received meaningful sums of money.

   **3. Additional Action to be Considered by the Court.**

The remaining question is whether Defendants should be held in contempt of court or otherwise sanctioned for their failure to timely produce what the Court required. Under <u>Ashcraft v. Coneco</u>, 218 F.3d 288 (4th Cir. 2000), the following elements must be demonstrated by clear and convincing evidence before a finding of contempt can issue: 1) the existence of a valid decree and the actual or constructive notice being provided to Defendants; 2) a finding that the decree was issued in favor of Plaintiffs; 3) a finding that there was an actual violation of the terms of the decree; and, 4) a finding that Plaintiffs suffered harm. <u>Ashcraft</u>, at 301. As inferred earlier, this fourth element is problematic.

To the extent the entry of any civil contempt is to be imposed in order to motivate Defendants to take certain action, such motivation is no longer necessary as all of the transactional documents have been provided. Moreover, Defendants argue that in order to hold them in contempt, the Court must find "that they knew how to do" what the Order required. (October Tr. at 57:1-5). Defendants contend that neither they nor their business manager intended to delay the production of the required documents. Defendants point out that as early as January 2011 questions existed as to whether Plaintiffs wanted any interest in the non-existent or defunct organizations (October Tr. at 58:6-8).

The undersigned is of the view that Defendants were personally obligated to make reasonable efforts to satisfy the orders of the Court, and it is Defendants who are to demonstrate their efforts. As stated by Plaintiffs, it appears that Defendants are able to accomplish other legal

tasks when they desire. Defendants "have been involved in numerous real estate projects. They have created LLCs. They have created limited partnerships. They have created all kinds of entities and clearly, they knew how to get a lawyer involved and do that" (October Tr. at 71:19-24). Plaintiffs' argument is that the effort should not have taken several months and this is borne out by Defendants' ability to do so promptly following the May 16, 2011 Order imposed by the Court. Simply put, Plaintiffs do not believe that Defendants made any real effort to comply with the Court's Order prior to the May hearing.

Defendants' argument is that their efforts were in fact reasonable and that the Confirmation is evidence of such. Defendants believed that these Confirmations were sufficient to convey the interests as ordered. While these beliefs were shattered during the hearing of May 16, 2011, Defendants claim to have no reason to believe the Confirmation would be ineffective. While accepting the Court's view, Defendants suggest that there is no evidence of Defendants harboring a malicious intent or engaging in contumacious conduct. Moreover, no testimony was offered from trial counsel during the May 16, 2011 hearing as to his legal advice or his assessment of the Confirmation, and therefore there is no basis for a finding of contempt. Defendants assert that all parties knew in January 2011 that the entities in question either did not exist and/or had no value (October Tr. at 83:24-84:7). Furthermore, Defendants note that the delay from January 18 until May 16, 2011 was merely the result of the parties waiting for a ruling from the Court.

The undersigned does not believe that a finding of a civil contempt is appropriate or meaningful. I agree that Defendants were able to, and should have secured the necessary legal assistance. However, given the fact that the corporate entities existed principally in an oral form,

Defendants may have formed a reasonable belief that a written Confirmation would satisfy the Court's Order. See Presutti v Presutti, 270 Md. 193, 197-98, (1973); Jamal v. Hussein, 237 Ga. App. 779 (1999); and Attorney Grievance Comm'n of Md. v. Culver, 317 Md. 265, 274 (2002).

Even though I do not recommend a finding of contempt, I recommend that Defendants be ordered to pay fees and expenses associated with Plaintiffs' efforts to obtain copies of the organizational documents and the transfers of interest. While PDP, LLC was administratively dissolved during much of the period in question, Defendants have offered no explanation for their failure to provide the organizational documents which existed as early as 2007. Defendants should have produced those materials on or before May 23, 2011.

More troubling, however, is Defendants' delay in responding to the Court's Order. The original deadline for compliance was December 23, 2010. There is no record of any attempt by Defendants to do so in a timely fashion. On January 5, 2011, the Court set a new deadline for compliance of January 12, 2011, in large measure due to Defendants expressed need to secure the services of a real estate transactional attorney. Yet, Defendants again did not comply in a timely fashion, nor is there any suggestion of involvement by an attorney with transactional experience. Finally, on January 18, 2011, Defendants transmitted the Confirmation which the Court has determined is fatally flawed, and still, there is no indication that Defendants took steps to secure the services of a transactional attorney. Defendants' conduct is directly responsible for nearly one month of delay. Yet, once Defendants obtained the services of additional counsel to draft the necessary documents, they were able to produce the bulk of acceptable materials in the space of approximately two weeks. This Court's original order was issued on December 10, 2010, and it provided ample time for Defendants to comply. Allowing room for the suggestion

that the transmission of the Confirmation was not the product of a motivation dismissive of the Court's Order, I am of the belief that Defendants conduct was still unreasonable and inflicted an unnecessary burden and expense upon Plaintiffs.

## IV. Conclusion

For the above reasons, I recommend that Defendants Laettner and Davis be sanctioned for reasonable fees and expenses incurred by Plaintiffs:

1) In their efforts between May 23, 2011 and July 1, 2011 to obtain the PDP, LLC organizational documents; and

2) In their efforts between December 23, 2010 and January 18, 2011, to obtain materials which were ordered produced by the Court.

/s/
Charles B. Day
United States Magistrate Judge

December 9, 2011